UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VELMA S VILLALON, | § | |
| | § | |
|     Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-09-252 |
| | § | |
| DEL MAR COLLEGE DISTRICT; aka | § | |
| DEL MAR COLLEGE, | § | |
| | § | |
|     Defendant. | § | |

## ORDER

On this day came on to be considered Defendant Del Mar College District's Motion for Summary Judgment. (D.E. 20, 21.) For the reasons stated herein, Defendant's Motion for Summary Judgment is DENIED.

**I.     Jurisdiction**

The Court has federal question jurisdiction over this action, 28 U.S.C. § 1331, as it is brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("ADA").

**II.    Factual and Procedural Background**

Plaintiff Velma Villalon filed this action on September 10, 2009 against Defendant Del Mar College District a/k/a Del Mar College ("Del Mar College" or "Defendant"), alleging discrimination and retaliation in violation of the FMLA and the ADA. (D.E. 1.)

According to Plaintiff's Original Complaint, Plaintiff began her employment with Del Mar College on February 15, 2001. (D.E. 1 at 2.) Plaintiff worked as an administrative assistant first for Dr. Blanca Garcia, the Vice President of Instruction, then

for Marjorie Villani, who replaced Dr. Garcia in that office on an interim basis. Plaintiff served as a "month-to-month" employee. (D.E. 21-3; 21-4.) As detailed herein, Plaintiff and Ms. Villani had a contentious working relationship, which ultimately led Plaintiff to complain to acting College President Jose L. Alaniz in March 2008. On March 6, 2008, Plaintiff went on leave pursuant to the FMLA "due to anxiety and stress." Plaintiff returned to Del Mar College on March 24, 2008. (D.E. 1 at 2.)

On March 26, 2008, Ms. Villani provided Plaintiff with a low performance appraisal, as compared to her prior performance appraisals. At that time, Plaintiff informed Ms. Villani that she had recently visited a doctor regarding a health condition, and that she would "probably need to take leave for six weeks during the summer." This leave was to be covered under the FMLA. (D.E. 1 at 2-3.) Plaintiff was terminated from employment on July 9, 2008. (D.E. 1 at 3.) Based on these allegations, Plaintiff states two causes of action. First, she states that Defendant discriminated against her and retaliated against her in violation of the FMLA, when Defendant terminated her employment. Second, she states that Defendant retaliated against her in violation of the ADA. (D.E. 1 at 3.)[1] The facts relevant to each claim are discussed more fully below.

Defendant filed the present Motion for Summary Judgment on June 15, 2010. (D.E. 20, 21.) Plaintiff filed a Response on July 6, 2010 (D.E. 26) and amended this Response on July 8, 2010 (D.E. 27).[2]

---

[1] The record indicates that Plaintiff exhausted her administrative remedies with respect to her ADA retaliation claim. (D.E. 27-5.) Although she did not do so with respect to her FMLA claim, exhaustion is not required. Cookston v. Freeman, Inc., 1999 WL 714760, at *4 n.7 (N.D. Tex. Sept. 14, 1999) ("The court notes that an EEOC charge need not be filed in an FMLA action."); Wilson v. Dallas Indep. Sch. Dist., 1998 WL 47635, at *5 (N.D. Tex. Jan. 30, 1998).

[2] On July 22, 2010, Defendant filed a Motion to Strike Exhibit A of Plaintiff's Summary Judgment Evidence as Inadmissible. (D.E. 28.) Defendant argues that Exhibit A (Plaintiff's affidavit) contains hearsay statements, conclusory allegations, and legal conclusions. As such, it (or at least substantial portions thereof) is inadmissible as summary judgment evidence. (D.E. 28 at 3-6.) Defendant also argues

### III.    Discussion

####    A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant "may not rely merely

---

that Exhibit F, the March 28, 2008 grievance against Ms. Villani for gender, national original, and age discrimination, demonstrates that Plaintiff's affidavit is a "sham" affidavit, as the grievance never refers to ADA or FMLA discrimination. (D.E. 28 at 6-7.) Plaintiff responds that the Affidavit contains factual statements, not legal conclusions, and are statements within the scope of Plaintiff's personal knowledge. (D.E. 29 at 1-7.) Upon review of Exhibit A, the Court concludes that the Defendant's objections are unfounded. The statements are based upon Plaintiff's personal knowledge, and are not legal conclusions. Moreover, the statements that Defendant claims are "hearsay" are in fact admissible as statements against interest, Fed. R. Evid. 804(b)(3), and are not offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Finally, the mere fact that Plaintiff did not assert FMLA or ADA discrimination in her March 28 grievance does not make her affidavit a "sham." The March 28 grievance is not inconsistent with her claims of FMLA and ADA discrimination, and she may well have been unaware that these forms of discrimination were actionable. Defendant's Motion to Strike is therefore DENIED. (D.E. 28.)

on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968). The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B. FMLA

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA protects employees from interference with their leave, as well as discrimination or retaliation for exercising their rights. 29 U.S.C. §§ 2615(a)(1)-(2).

"To establish a prima facie case for discrimination or retaliation under the FMLA, a plaintiff must demonstrate [1] that she is protected under the FMLA; [2] she suffered an adverse employment decision; and [3] that she was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was

made because of her request for leave.  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to provide a legitimate nondiscriminatory or non-retaliatory reason for the termination.  If the employer articulates such a reason, the plaintiff must show by a preponderance of the evidence that the employer's reason is a pretext for discrimination or retaliation."  Comeaux-Bisor v. YMCA of Greater Houston, 290 Fed. Appx. 722, 724-25 (5th Cir. 2008) (citing Bocalbos v. Nat'l Western Life Ins. Co., 162 F.3d 379, 384 (5th Cir. 1998)).

"When a plaintiff alleges mixed-motive retaliation (i.e., that discrimination was not the sole reason for discharge but was a motivating factor)," the court may apply the "mixed-motive" framework.  Crouch v. J.C. Penney Corp., Inc., 337 Fed. Appx. 399, 401 (5th Cir. 2009).  This framework provides:

> (1) the employee must make a prima facie case of discrimination; (2) the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) the employee must offer sufficient evidence to create a genuine issue of fact either that (a) the employer's proffered reason is a pretext for discrimination, or -- and herein lies the modifying distinction -- (b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination. If the employee proves that discrimination was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus.

Crouch, 337 Fed. Appx. at 401 (citing Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 333 (5th Cir. 2005)).  The mixed-motive framework is applicable to FMLA claims. Richardson, 434 F.3d at 334.  Although Plaintiff argues that the "mixed-motive" framework is applicable to her ADA retaliation claims as well (D.E. 27 at 10-13), the Fifth Circuit has applied the more general McDonnell-Douglas framework without a mixed-motives analysis in ADA retaliation claims.  See Seaman v. CSPH, Inc., 179 F.3d

297, 301 (5th Cir. 1999); see also Grubic v. City of Waco, 262 Fed. Appx. 665, 666-67 & n.6 (5th Cir. 2008) (citing Seaman); Miles-Hickman v. David Powers Homes, Inc., 589 F. Supp. 2d 849, 868 (S.D. Tex. 2009) ("Retaliation claims brought under the ADA are analyzed using the McDonnell Douglas burden-shifting test . . . .").

  On summary judgment, Defendant argues that Plaintiff has not demonstrated the third element of the prima facie case for FMLA discrimination or retaliation. In other words, Defendant contends that Plaintiff's FMLA claim must be dismissed because she cannot show (1) she was treated in any manner that was less favorable from other employees who did not receive FMLA leave, or (2) that Defendant's decision to terminate her was made because of her FMLA request. (D.E. 21 at 11.) Plaintiff responds that she has made out a prima facie FMLA discrimination case. (D.E. 27 at 8.)

  As an initial matter, Plaintiff has not put forth a valid comparator employee. To be a valid comparator, the individual must be "nearly identical" and "similarly situated." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005); see also Lee v. Kansas City Southern Ry. Co., 574 F.3d 253, 260 (5th Cir. 2009) ("[A]n employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"). Plaintiff has not identified any comparator in her Complaint or in her Response. The only reference to a comparator is made in a discovery response, in which Plaintiff identifies Mary Reynoso, who is "a younger employee who assisted Plaintiff while she was employed with Defendant," and "was placed in Plaintiff's position after Plaintiff was terminated." (D.E. 21 at 13 n.5 (citing Plaintiff's response to an interrogatory).) As part of her prima facie case, the burden is on Plaintiff to demonstrate the existence of a valid comparator.

Comeaux-Bisor, 290 Fed. Appx. at 724-25.  Plaintiff has not mentioned Ms. Reynoso in her pleadings, let alone demonstrated that she is a valid comparator.  Thus, Plaintiff can only prove her prima facie case if she demonstrates that her termination was due to her request for FMLA leave.

Upon reviewing the evidence, the Court concludes that there remains a "genuine issue" as to the reason for Plaintiff's termination, particularly when considering the "mixed-motive" framework.  From the evidence available, it is unclear whether Plaintiff's termination was due to FMLA discrimination or retaliation, rather than a non-discriminatory, non-retaliatory reason.  The Court begins by summarizing the evidence in this case.

Ms. Villani's affidavit describes issues with Plaintiff's work performance beginning in November 2007.  Ms. Villani states in her Affidavit that Plaintiff "would often address visitors [to the office] in a curt, reserved manner, giving her the appearance of being rude, in a bad mood, angry, or defensive," that Plaintiff "was withdrawn, surly, and non-communicative towards Villani.  When Villani instructed Villalon on how Villani wanted something done, Villalon would become argumentative, telling Villani that was not how the task was done before Villani became Interim [Vice President of Instruction]," and that Plaintiff "would become evasive or defensive" when asked about the "status of work-related assignments."  (D.E. 21-5 at 2.)  In addition, Villani states that Plaintiff's "arrival time at work was never consistent, and she was often late," and that Plaintiff would "leave the office for the day without advising Villani she was leaving." (D.E. 21-5 at 2-3.)  Ms. Villani brought these issues to Plaintiff's attention, informing her as to the manner in which she expected work to be performed in the office, and attempted

to accommodate Plaintiff by asking her to "come up with alternative hours" for work, if the standard office hours did not work for her. (D.E. 21-5 at 3.) Villani also communicated these issues in January or February 2008 to acting College President Alaniz. At that time, she suggested that Plaintiff would need to be terminated if the situation did not improve. (D.E. 21-5 at 3.) Villani also e-mailed Human Resources director Lewis Finch on March 5, 2008, to obtain guidance on how to address Plaintiff's repeated lateness. (D.E. 21-5 at 3.)

Plaintiff took FMLA leave from March 6 to March 24, 2008. Upon returning, Villani states that Plaintiff did not request any type of accommodation, or provide any notification that she had a qualifying disability under the ADA, nor the potential need to use FMLA leave again in the future. (D.E. 21-5 at 3.) Villani conducted a performance appraisal of Plaintiff on March 26, 2008, in which she advised Plaintiff of a number of areas in which she needed improvement, including work hours, communication skills, and interpersonal skills. The evaluation also stated that, "[t]here have been periods of improvement followed by periods of relapse into behavior that is unacceptable for a person who serves as an administrative assistant to a Vice President." (D.E. 21-8 at 4.)

Plaintiff exercised her right to appeal the evaluation to the College President, acknowledging job related issues in this appeal and stating that she intended to improve. For example, in response to criticism that Plaintiff is "[n]ot always flexible and has difficulty adapting to different ways of doing assignments," Plaintiff stated, "[t]he transition has been challenging at times, but I know we are progressing." In response to criticisms regarding lateness, Plaintiff stated "I arrive a little late, but stay until 6:00 pm, 6:30 pm, and sometimes 7:00 p.m. every day." (D.E. 21-9 at 3.) Plaintiff was advised to

work with Human Resources on a Performance Improvement Plan, designed to help her improve her performance at work. (D.E. 21-5 at 4.)

After the performance review, on March 28, 2008, Plaintiff filed a complaint with the Human Resources office, stating that Ms. Villani had subjected her to a hostile work environment, and discriminated against on the basis of her age, gender, and race, but did not mention FMLA or disability-related discrimination. Plaintiff claims that Ms. Villani yelled at her during her performance appraisal, and that she was "afraid and intimidated throughout the whole ordeal." (D.E. 27 at 5.) After an investigation, the claims were dismissed due to lack of evidence on June 25, 2008. (D.E. 21-5 at 4.)

Villani states that Plaintiff's performance improved briefly after the institution of the Performance Improvement Plan, but then began to decline again. The performance deficiencies continued in the Spring 2008 semester, most notably repeated lateness. Thereafter, Villani "realized [she] could no longer rely upon or trust" Plaintiff, and started to seriously consider her release. On June 27, 2008, Villani met with President Alaniz and the Human Resources Director Finch to discuss procedures for her termination. Thereafter, on July 9, 2008, Plaintiff was formally terminated. (D.E. 21-5 at 5.) Villani concludes that her decision to release Plaintiff "had nothing to do with her legitimate exercise of FMLA rights, nor was it the result of any real or perceived disability on her part. Rather, [she] came to [her] conclusion after literally months of excessive tardiness and absences, poor performance, and unprofessional behavior and attitude by [Plaintiff]." (D.E. 21-5 at 5.)

In her Response, Plaintiff states that beginning in 2004 she was the victim of sexual harassment by Del Mar College's former president, Dr. Carlos Garcia. In January

2007, she filed a formal sexual harassment complaint with Del Mar College against Dr. Garcia, claiming gender discrimination, sexual harassment, hostile work environment, and retaliation. These claims were denied by Del Mar College, and again by the Board of Regents in June 2007, upon a finding of insufficient evidence. Plaintiff states that she continued to be victimized, discriminated against, and retaliated against by Del Mar College representatives, including Ms. Villani. In the first week of March 2008, Plaintiff states that she contacted Mr. Alaniz to complain that Ms. Villani was creating a hostile work environment. Plaintiff alleges that Ms. Villani began to search for ways to retaliate against her beginning in March 2008, in retaliation for Plaintiff's discussion with Mr. Alaniz. (D.E. 27 at 4.)

Plaintiff states that on March 26, 2008, after returning from FMLA leave, Ms. Villani threatened her employment and provided her with a low Performance Appraisal, which was far lower than other appraisals. During the evaluation, Plaintiff informed Ms. Villani that she would need additional FMLA leave for six weeks during the summer. Ms. Villani was "visibly annoyed and was again rude," stating "who is going to cover for you in the office?," "what am I going to do while you are gone?" and "you have already been out a couple of weeks." (D.E. 27-1 at 2.) Plaintiff further states that Ms. Villani made notes regarding her late arrivals at work, which "should have been covered under the FMLA." (D.E. 27 at 5; D.E. 27-1 at 2.)

Plaintiff contends that "Del Mar College wanted to get rid of Ms. Villalon at any cost. She was a thorn in the side of Del Mar College and a victim who was not going to lie down in the face of blatant discrimination and harassment. . . . [T]he tolls that Del Mar

College's actions took on Ms. Villalon impacted her and sent her into a tailspin of depression, panic attacks, and anxiety." (D.E. 27 at 6.)

The evidence described above demonstrates the existence of a disputed issue of material fact, namely the reason for Ms. Villalon's termination. As an initial matter, the Court must consider the "temporal proximity" between Plaintiff's FMLA leave and the retaliation in evaluating whether the adverse employment action was causally related to the FMLA leave. Mauder v. Metro. Transit Auth. of Harris County, Texas, 446 F.3d 574, 583 (5th Cir. 2006). The Fifth Circuit has stated that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes," which is sufficient "to satisfy the . . . prima facie case." Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001). In this case, Plaintiff's FMLA leave ended on March 24, 2008, and she was terminated on July 8, 2008. This is within the four month window that the Fifth Circuit has identified. Moreover, the poor performance evaluation came on March 26, 2008, a mere two days after Ms. Villalon returned from FMLA leave. This low performance evaluation, even if not an "adverse employment action" in its own right, was an important precursor to Villalon's termination several months later. This poor evaluation stands in stark contrast to earlier evaluations completed in 2002 and 2004 by supervisors Dr. Richard R. Armenta and Dr. Rosie Garcia. For example, an evaluation for May 2001 to June 2002 provides Ms. Villalon with an overall appraisal of "exceeds expectations," and states that her greatest strength is the "[a]bility to stay calm in times of tension and work with difficult people." (D.E. 27-1 at 8-10.) Another evaluation, dated June 24, 2004, states that Ms. Villalon "meets expectations," that she is "[v]ery professional and appropriately polite," and is "[a] very

nice person, very professional and focused on doing her job." (D.E. 27-1 at 11-12.) While these evaluations also noted Ms. Villalon's difficulties in arriving on time, this issue did not appear to negatively impact her overall evaluation. (D.E. 27-1 at 11-12.) A June 10, 2005 evaluation provides the same analysis. (D.E. 27-1 at 17-19.) When these positive evaluations are contrasted with the March 26, 2008 post-FMLA evaluation, there is a substantial question as to whether Plaintiff's use of FMLA leave contributed to the very negative performance review, conducted immediately after her return.

In addition, Plaintiff asserts that Villani was "extremely rude" to her, that Villani was "visibly upset" that Plaintiff had taken FMLA leave, and that Villani expressed outrage that Plaintiff was planning to take FMLA leave again in the summer. (D.E. 27 at 4.) As noted above, Plaintiff alleges that when she told Ms. Villani that she expected to take six weeks of FMLA leave in the summer, Ms. Villani was "visibly annoyed and was again rude," stating "who is going to cover for you in the office?," "what am I going to do while you are gone?" and "you have already been out a couple of weeks." (D.E. 27-1 at 2.)[3] The Fifth Circuit has held that a supervisor's negative reactions to the use of FMLA leave may be sufficient in certain circumstances to establish causation. See, e.g., McArdle v. Dell Products, L.P., 293 Fed. Appx. 331, 338 (5th Cir. 2008) (finding that allegations created an inference of causation where there was "evidence that [Plaintiff's] supervisor was 'frustrated' with his absences and expressed concern about his attendance."). Here, Ms. Villani's comments constitute evidence of her concern about Ms. Villalon's use of FMLA leave, and her displeasure with Ms. Villalon's request for additional FMLA leave during the summer. These statements further support the

---

[3] As noted above, the Court concludes that these statements are admissible as statements against interest. Fed. R. Evid. 804(b)(3).

conclusion that there remains a genuine issue of material fact as to the reason for Ms. Villalon's termination.

Finally, Ms. Villalon was terminated in July 2008, before she was able to utilize her six weeks of FMLA leave. The timing of her termination also leads to Court to question whether Defendant chose to release her rather than allow her additional FMLA leave time.

These outstanding issues combine to present a genuine issue of material fact as the reason for Plaintiff's termination. While Defendant may be able to satisfy its burden to provide a "legitimate, non-discriminatory reason" for Plaintiff's termination, Plaintiff may be able to meet her burden under the mixed-motive framework by demonstrating that Defendant's reason, even if true, is only one reason for its conduct, another of which was discrimination. Crouch, 337 Fed. Appx. at 401. At that point, Defendant would have to prove that it would have terminated Plaintiff despite the discriminatory animus. Id. The resolution of this issue turns upon disputed issues of material fact. As such, the Court concludes that summary judgment is inappropriate on Plaintiff's FMLA claim.

### C.   ADA Retaliation

To demonstrate unlawful retaliation under the ADA, a plaintiff must make a prima facie case of "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. If the plaintiff establishes a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. If such a reason is provided, the plaintiff must submit sufficient evidence that the proffered reason is a pretext for retaliation. The employee must show that but for the

protected activity, the adverse employment action would not have occurred." Tabatchnick v. Continental Airlines, 262 Fed. Appx. 674, 676 (5th Cir. 2008) (citing Seaman v. CSPH, 179 F.3d 297, 301 (5th Cir. 1999)).  In an ADA retaliation claim, ultimately "the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." Seaman, 179 F.3d at 301. "[I]n order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices." Id. In this case, Plaintiff has identified herself as having depression, as well as stress, depression, and panic attacks. (D.E. 27 at 4.)

Plaintiff here has satisfied the prima facie elements of ADA retaliation. Turning to the first element, "[i]t is undisputed that making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." Tabatchnik v. Continental Airlines, 262 Fed. Appx. 674, 676 (5th Cir. 2008); Stoddard v. Geren, 2010 WL 774156, at *21 (S.D. Tex. Mar. 3, 2010) ("Requesting an accommodation, even if it is later determined that the employee making the request is not disabled, is a protected activity so long as the employee had a good faith belief that he was covered by the ADA.").[4] Although the Fifth Circuit has not addressed this issue specifically, many other circuits have held that a "reasonable accommodation" may include seeking medical leave. See Brannon v. Luco Mop Co., 521 F.3d 843, 849 (8th Cir. 2008) ("[A]llowing a medical leave of absence might, in some circumstances, be a reasonable accommodation . . . ."); Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 967 (10th Cir. 2002) ("We have previously explained that limited leave for medical

---

[4] A "request for accommodation" can be considered protected under the ADA if a plaintiff has "a good faith belief that he was disabled or perceived as disabled." Tabatchnik, 262 Fed. Appx. at 677.  In this case, Plaintiff has identified herself as having depression, among other mental health issues. (D.E. 27 at 4.)

treatment may qualify as reasonable accommodation under the ADA."); Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1136 (9th Cir. 2001); García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 649-50 (1st Cir. 2000); Cehrs v. Nw. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 781-83 (6th Cir. 1998); Haschmann v. Time Warner Entm't Co., 151 F.3d 591, 601 (7th Cir. 1998); but see Munoz v. Echosphere, L.L.C., 2010 WL 2838356, at *13 (W.D. Tex. July 15, 2010) ("FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision."). At least one court in this district has suggested that leave may constitute a "reasonable accommodation" under the ADA. Preston v. Victoria Indep. Sch. Dist., 2010 WL 2735729, at *11 (S.D. Tex. July 12, 2010). Consistent with this authority, the Court concludes that for purposes of the first element of the prima facie case, Plaintiff's request and use of FMLA leave in March 2008, as well as her request for additional leave in the summer of 2008, constitutes a "reasonable accommodation" under the ADA. As such, Plaintiff engaged in a "protected activity."

Plaintiff satisfies the second element of the prima facie case, an "adverse employment action," as she was terminated in July 2008. The third element, the "causal connection," remains in dispute. As detailed above in the section on FMLA discrimination, there is a genuine issue of material fact as to the reason for Defendant's decision to terminate Plaintiff. While Defendant has proffered a legitimate, non-discriminatory reason for the termination, Plaintiff has produced evidence of pretext. Accordingly, fact issues exist which preclude entry of summary judgment for Defendant on the issue of ADA retaliation.

**IV.     Conclusion**

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment.  (D.E. 20, 21.)

SIGNED and ORDERED this 13th day of August, 2010.

_____
Janis Graham Jack
United States District Judge